FILED
2014 Feb-04  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

PATRICK NOAH NORMAN,

> Plaintiff,

vs.                                        CASE NO.: CV-12-J-2136-S

TRACEY C. NORMAN, et al.,

> Defendants.

### <u>MEMORANDUM OPINION</u>

This case comes before the court on the defendant Sams' and defendants Neill and Rector's motions for summary judgment, evidentiary submissions and memoranda of law (docs. 119-123). By Exhibit A to the Scheduling Order dated March 5, 2013 (doc. 79), the parties were informed of time limits for responding to dispositive motions. Pursuant to that Order, the plaintiff had until January 24, 2014, to respond to the outstanding motions, but to date no such response has been received. Although Tracey C. Norman is also a named defendant, all parties concede she cannot be located.[1]

Before delving into the merits of this case, which the court notes is a domestic dispute which has found its way to federal court, the court first addresses the filing

---

[1] See plaintiff depo. II, at 23. Mail sent by the court and addressed to her last known address has been returned as well.

of this action under Rule 11 of the Federal Rules of Civil Procedure as well as the concept of judicial estoppel.

Specifically, under the relevant portions of Rule 11, an attorney certifies to the court that, in presenting a pleading, to the best of his or her personal knowledge such pleading is not "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support." Rule 11 (b)(1) and (3), Fed.R.Civ.Pro. The court has reason to question whether the filing of the complaint and amended complaint in this action violated this Rule.

In relation to filing a bankruptcy action, the doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Eleventh Circuit lists two "primary factors" for parties to establish when invoking the doctrine: "'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'" *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir.2010) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir.2002)). The court again questions the filing of the

2

complaint and amended complaint given the plaintiff's Chapter 7 bankruptcy.

## FACTUAL BACKGROUND

The factual background necessary for disposition of this action is as follows:

Plaintiff married defendant Tracey Norman in January 2010.  Doc. 123-2. They spent several years prior to this time and numerous months after that having each other arrested on claims of domestic violence and obtaining Protection From Abuse Orders against each other.  *See e.g.,* doc. 122-4, at 12; doc. 123-2, at 4, 8, 13, 14, 19-21, 35-39, 52-55.  In May 2010 Tracey either left or was thrown out by plaintiff.  Doc. 123-2 at 42.  She immediately moved in with and began a relationship with Michael Wilkerson.  She and plaintiff's harassment of each other continued.  *See e.g.*, doc. 123-2, at 41-42; plaintiff's amended complaint (doc. 61), ¶¶ 30-33.  On July 20, 2010, plaintiff went to the Hoover Police to bring a charge against defendant Tracey Norman for a March 2010 knife fight between them in which they were both injured.  Plaintiff depo. at 63-68; see also Incident Report, submitted as doc. 122-4. This report in July was the first time plaintiff met Detective Sams, an officer in the Family Services Unit for the City of Hoover.  Sams' depo. at 8; Plaintiff depo. at 63-68.

Meanwhile, based on hearsay transcriptions of alleged text messages which plaintiff asserts were left on Michael Wilkerson's phone for Tracey Norman by

defendant Sams, plaintiff became convinced that at some unknown point in time Tracey Norman was having an inappropriate relationship with Detective Sams.  *See* doc. 123-2, at 47, plaintiff depo. at 23-24, 36-37. In turn, based on this alleged inappropriate relationship, and disregarding that the plaintiff and Tracey Norman had already engaged in a stream of allegations and arrests against each other, plaintiff somehow became sure that Tracey Norman and Detective Sams conspired to violate his civil rights by having him arrested, even though the relevant arrest warrants were issued by counties and cities in which Detective Sams did not work.[2]  Plaintiff depo. at 38-44.  Plaintiff took these allegations to Sams' supervisor, Captain Janie Neill, and when she did not respond as plaintiff thought she should, he went to Niell's supervisor, Captain D. Gregg Rector.  Declaration of Neill, ¶¶ 10-12; declaraion of Rector, ¶¶ 10-15.  Because neither defendant Neill nor Rector acted on plaintiff's unsubstantiated, loosely constructed allegations of conspiracy and wrongdoing between Detective Sams and Tracey Norman, the plaintiff sues them for deliberate indifference to the violation of his civil rights by Detective Sams.  *See* Amended

---

[2]For example, the plaintiff had a warrant for his arrest issued by the City of Prattville, based on allegations of harassing communications by defendant Tracey Norman.  Plaintiff depo. at 171.  In fact, the plaintiff pleads that after "Detective Sams failed attempt to arrest Mr. Norman and have him held and transported to Prattville, Mr. Norman voluntarly traveled to Prattville and turned himself in...."  Amended complaint, ¶ 42.  That case was dismissed.  Doc. 123-2 at 57.  In February 2011, an arrest warrant was issued for plaintiff for criminal trespass by the City of Montgomery based on allegations by Tracey Norman.  Doc. 123-2 at 67-70.

Complaint, Count XVIII, ¶ 138.

The majority of plaintiff's claims are against defendant Tracey Norman.  The

Amended Complaint contains the following claims:

> **COUNT I**: Malicious Prosecution and /or Abuse of Process #1– against Tracey Norman only[3]
> **COUNT II**: Assault and Battery #1 – against Tracey Norman only.[4]
> **COUNT III**: Assault and Battery #2 – against Tracey Norman only.[5]
> **COUNT IV**: Malicious Prosecution and/or Abuse of Process #2 – against Tracey Norman only.[6]
> **COUNT V**:  Malicious Prosecution and/or Abuse of Process #3 – against Tracey Norman only, or possibly Tracey Norman and Detective Sams.[7]
> **COUNT VI**: Violation of the Alabama Litigation Accountability Act #1: Against Tracey Norman and Detective Sams.[8]

---

[3]This asserts an arrest on February 24, 2010, by the City of Hoover police.

[4]This claim arises from an incident where the happy couple appeared at the emergency room both sporting knife wounds.  Hospital personnel contacted Hoover police department, and records reflect both Mr. and Mrs. Norman declined to press charges against the other.  This report was made by a nurse at the hospital and recorded by Officer Harris.  Both plaintiff and Tracey Norman are listed as victims in this report.  *See* doc. 122-4.  The evidence supports a finding that the knife fight occurred in March 2010, not 2012 as alleged in the Amended Complaint.  *See* doc. 122-4, at 7.

[5]This claim alleges Tracey Norman attacked the plaintiff "manually" and poured hot coffee on him on May 28, 2012.  As plaintiff testified he threw Tracey Norman out of his apartment on May 28, 2010, the court believes that may have been the actual date of this event.

[6]This concerns a June 29, 2010, City of Hoover arrest.

[7]Plaintiff asserts that on August 2, 2010, Detective Sams helped Tracey Norman obtain a Petition for Protection from Abuse against plaintiff in the Circuit Court of Jefferson County, which Detective Sams then personally served on plaintiff.  See doc. 123-2 at 13-21.

[8]This Count also concerns the August 2, 2010, Protection from Abuse Petition.  However, this is not a viable stand alone cause of action.  *See Plus Int'l, Inc. v. Pace*, 689 So.2d 160, 162 (Ala.Civ.App.1996) (The ALAA does not create a cause of action but, rather, is "a tool to be

**COUNT VII**: Malicious Prosecution and/or Abuse of Process #4: Against Tracey Norman and Detective Sams.[9]

**COUNT VIII**: False Imprisonment – Against Detective Sams only.[10]

**COUNT IX**: Trespass and Conversion – Against defendants Sams and Tracey Norman.[11]

**COUNT X**: Malicious Prosecution and/or Abuse of Process #5: Against Tracey Norman and Detective Sams.[12]

**COUNT XI:** Malicious Prosecution and/or Abuse of Process #6: Against Tracey Norman.[13]

**COUNT XII:** Malicious Prosecution and/or Abuse of Process #7:

---

used by the court to sanction parties who bring frivolous litigation."). Additionally, the plaintiff may only recover costs and reasonable attorney's fees should a court find the underlying claim was without substantial justification. *See* Ala.Code. § 12-19-272 (a).

[9]This claim concerns defendant Tracey Norman claiming plaintiff violated an already existing Protection from Abuse Order in Elmore County in August 2010.

[10]This claim too arises from the Elmore County Protection from Abuse violation, for which Detective Sams allegedly served plaintiff with the Elmore County warrant for his arrest on August 10, 2010. *See* doc. 122-5. However, the evidence demonstrates another officer actually took the plaintiff into custody. Doc. 122-6 (reflecting "Burns" was the arresting officer). Although plaintiff alleges these events occurred August 10, 2012, the evidence demonstrates the actual events took place 2010.

[11]The plaintiff alleges that Tracey Norman broke into his residence on August 10, 2010, to steal his property, including his dog and his Rolex, and that Detective Sams conspired with Tracey to enable Tracey to execute this break-in by having the plaintiff arrested. The Normans were still married to each other at this time. Although plaintiff alleges these events occurred August 10, 2012, the evidence demonstrates the actual events took place 2010.

[12]In this claim, plaintiff asserts that Tracey Norman made false statements to the City of Prattville police on September 24, 2010, and that somehow Detective Sams had something unspecified to do with these false statements.

[13]Plaintiff alleges that on October 7, 2011, Tracey Norman maliciously filed a divorce case against the plaintiff in Jefferson County, although plaintiff had already filed for divorce against her in the Bessemer division of Jefferson County. The plaintiff alleges the malicious divorce case was dismissed on April 29, 2011, and the divorce action he filed is still pending (as of January 2013). *See* Amended complaint, ¶¶ 93-95.

Against Tracey Norman and Detective Sams.[14]

**COUNT XIII**: Malicious Prosecution and/or Abuse of Process #8: Against Tracey Norman and Detective Sams.[15]

**COUNT XIV**: Violation of the Alabama Litigation Accountability Act #2: Against Tracey Norman and Detective Sams.[16]

**COUNT XV**: False Arrest pursuant to 42 U.S.C. § 1983 – against defendant Sams.[17]

**Count XVI**: *Brady* Violations pursuant to 42 U.S.C. § 1983 – against Detective Sams.[18]

**Count XVII**: Previously dismissed by the court.

**Count XVIII**: Deliberate Indifference Through Custom by Defendants Neill and Rector.[19]

---

[14]This Count complains that defendant Tracey Norman falsely accused plaintiff of criminal trespass to the City of Montgomery police and that somehow Detective Sams participated in this February 15, 2011, complaint.

[15]This claim asserts that defendant Tracey Norman falsely filed a Petition for Protection from Abuse in the Circuit Court of Montgomery County on February 16, 2011, and that somehow Detective Sams participated in this.  Amended Complaint, ¶ 103

[16]This Count also concerns the August 2, 2010, Jefferson County Protection from Abuse Petition.  This Count appears wholly duplicative and indistinguishable from Count VI.  In fact, Count XIV is a verbatim restatement of Count VI.

[17]The plaintiff returns to the events of August 10, 2010, which he was taken into custody by someone other than defendant Sams, on an arrest warrant which issued from Elmore County, and claims not only did Detective Sams arrest him, but further that Sams did so to give Tracey Norman an opportunity to burglarize plaintiff's home, all of which violated his rights to be free from unlawful seizure under the 4th and 14th Amendments.

[18]Assuming that Sams had a romantic relationship with defendant Tracey Norman, and assuming that the same is somehow exculpatory evidence which Sams had a duty to and failed to disclose (although plaintiff does not allege to whom the relationship should have been disclosed), the plaintiff also fails to allege in which criminal action against him this may have been exculpatory evidence.

[19]The plaintiff alleges that defendants Neill and Rector, as supervisors, have created an atmosphere of tolerance of willful, wanton and improper behavior of Hoover officers.  Amended complaint, ¶ 136.  Plaintiff alleges that Neill and Rector failed to train or discipline officers reported for misconduct, failed to implement policies for reporting allegations of misconduct,

Meanwhile, during which this sordid sequence of events unfolded, the plaintiff filed for Chapter 7 bankruptcy on February 23, 2011.  *See In re Patrick N. Norman*, Case No.  11-00942-TOM7, (submitted as doc. 122-9).  In Schedule B of that filing, under "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to set off claims.  Give estimated value of each," the plaintiff checked "None."  *Id.* at 11.  He also represented himself as unmarried at the time the petition was filed.  *Id.*, at 40.  These documents were all signed under penalty of perjury.  *Id.*, at 24, 45.  Plaintiff was discharged from bankruptcy on May 31, 2011.

The court finds that at the time of filing his bankruptcy, the facts underlying plaintiff's claims here were fully developed.  Lacking from the evidence before the court is any allegation that the plaintiff ever amended his Chapter 7 petition, moved to reopen his Bankruptcy case, or took any other action to notify the Bankruptcy Court that he had this action.

## SUMMARY JUDGMENT STANDARDS

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* Federal Rule

---

failed to supervise to prevent misconduct, failed to discipline, and failed to train officers concerning citizens' constitutional rights.  The court believes this claim may be intended to be brought under 42 U.S.C. § 1983.

of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).  Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th  Cir.1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable.  *See*

Rule 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S.Ct. 2505,

2511 (1986).  Speculation does not create a genuine issue of fact.  *Cordoba v.*

*Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005).

The court must consider the evidence in the light most favorable to the plaintiff

and may not make credibility determinations nor weigh the parties' evidence.

*Frederick v. Sprint/United Management Co.,* 246 F.3d 1305, 1311 (11th Cir.2001);

*Stewart v. Booker T. Washington Insurance*, 232 F.3d 844, 848 (11th Cir.2000).

## LEGAL ANALYSIS

*A.  Chapter 7 Bankruptcy*

The law is well established that the case pending before this court was, at the

time of filing his bankruptcy, a contingent or unliquidated claim, despite plaintiff's

statement under oath to that court that he had no such claims. Eleventh Circuit law is

also well-established that debtors have a continuing duty to disclose such changes.

In fact, full and honest disclosure in bankruptcy proceedings is "'crucial' to the

system's 'effective functioning.'"  *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269,

1274 (11th Cir.2010) (quoting *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285

(11th Cir.2002)).  Further, "a pending lawsuit seeking monetary compensation qualifies

as an asset." *Id*. (quoting *Parker v. Wendy's International, Inc*., 368 F.3d 1268 (11th

Cir.2004).  The "property of the bankruptcy estate includes all potential causes of

action that exist at the time petitioner files for bankruptcy." *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir.2003) (citing 11 U.S.C. § 541(a)).

Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker*, 365 F.3d at 1272 (citing *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir.2003)). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy code." *Id*. (citing 11 U.S.C. § 554).

In the facts before this case, plaintiff's claims became an asset of the bankruptcy estate when he filed his bankruptcy petition. When this action was filed in the Circuit Court of Jefferson County, Alabama, on May 7, 2012, this case remained an asset of the bankruptcy estate.   Thus, plaintiff has no standing to bring the instant claims. *Parker*, 365 F.3d at 1272. *See also Witko*, 374 F.3d at 1042 ("pre-petition causes of action are part of the bankruptcy estate...)."   Even if the plaintiff had standing to pursue his claim here, the court would be remiss in not finding the plaintiff judicially estopped from bringing the same.  Because the events underlying the plaintiff's claims in this court had already occurred at the time he filed his bankruptcy petition, allowing the claims to proceed here effectively condones the actions of any plaintiff savvy enough, upon accrual of a claim, to hurriedly bring a Chapter 7 petition, receive a

discharge, and then bring a lawsuit based on the already accrued action, thus protecting any potential recovery from creditors. This court cannot allow such an abuse of the system.

Because the court finds that plaintiff has no right to pursue this action because it is the property of the bankruptcy estate, and because the court also finds that the plaintiff has maintained inconsistent positions in this court and the bankruptcy court, this action is due to be dismissed with prejudice. However, this is not the sole grounds on which this action should be dismissed.

## B. Rule 11 and Frivolous Litigation

The court finds that given plaintiff's deposition testimony, in conjunction with all pleadings filed to date, plaintiff's counsel violated Rule 11 in allowing this case to proceed, especially after her client testified by deposition. In essence, every allegation in the plaintiff's complaint is premised on the existence of an "inappropriate relationship" between defendant Tracey Norman and defendant Sams. However, plaintiff and defendant Tracey Norman's pattern of having each other arrested pre-dates not only any feasible contact defendant Sams' had with defendant Tracey Norman, but also pre-dates their marriage. While still married to each other, Tracey Norman is alleged to have moved in with non-party Michael Wilkerson, who, according to plaintiff, became suspicious of this alleged inappropriate relationship

between defendant Tracey Norman and defendant Sams, and took his suspicions – for whatever reason – to plaintiff, and from which plaintiff then uses his wife's boyfriend's unsubstantiated allegations to file a lawsuit claiming violations of his rights by defendants Sams, Neill and Rector, based on this multi-year pattern he and his wife had of having each other arrested.

Rule 11 sanctions are warranted when a party files an action that: (1) has no reasonable factual basis; (2) has no reasonable chance of success based on the legal theory used, or that cannot be advanced as a reasonable basis to change existing law; or (3) is filed in bad faith for an improper purpose. *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir.2003).  In determining whether to impose sanctions, the district court determines "whether the party's claims are objectively frivolous-in view of the facts or law-and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry."  *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir.1996).

Because the defendants did not seek Rule 11 sanctions in their motions for summary judgment, and because this court cannot *sua sponte* grant summary judgment on a ground not raised in the defendants' pleadings, the court notes only that to pursue a cause of action long after the evidence demonstrates a complete and total lack of

basis for doing so violates both the letter and the spirit of Rule 11. Had plaintiff's counsel made a reasonable inquiry into the evidentiary basis for the plaintiff's claims, counsel would have realized the same were frivolous.

*C. § 1983 and Claims of Deliberate Indifference*

Defendants Rector and Neill are named solely in Count XVIII of the Amended Complaint, which claims these defendants acted with deliberate indifference to the plaintiff's rights.

The plaintiff alleges that defendants Neill and Rector, as supervisors, created an atmosphere of tolerance of willful, wanton and improper behavior of Hoover officers. Amended complaint, ¶ 136. Plaintiff alleges that Neill and Rector failed to train or discipline officers reported for misconduct, failed to implement policies for reporting allegations of misconduct, failed to supervise to prevent misconduct, failed to discipline, and failed to train officers concerning citizens' constitutional rights. The court believes this claim may be intended to be brought under 42 U.S.C. § 1983, although no mention of a specific Constitutional right which was violated is made by the plaintiff within this Count.

Lacking from the plaintiff is any evidence at all to support these claims. The evidence submitted demonstrates that plaintiff complained to Neill that Sams was in an inappropriate relationship with plaintiff's wife, while recognizing that the

plaintiff's wife was already in a relationship with someone other than plaintiff and Sams at the relevant time.  Rather than bring defendant Neill any evidence of this, the plaintiff went to defendant Rector with the same complaints of the wrongdoing by defendant Sams.  *See e.g.*, declaration of Neill (doc. 120); declaration of Rector (doc. 121).  Defendant Rector also asked plaintiff to bring him evidence of the alleged relationship, and plaintiff failed to do so.  Declaration of Rector, ¶ 12; plaintiff depo. II at 55.

Deliberate indifference exists when a government official "(1) had subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence." *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir.2007) (internal quotation marks and alterations omitted). "[D]eliberate indifference requires that the indifference be a deliberate choice, which is an exacting standard." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir.2012) (internal citations and quotation marks omitted).  In order to demonstrate deliberate indifference for purposes of failure to train or failure to supervise, the plaintiff must provide some evidence of similar constitutional violations by untrained employees.  *Connick v. Thompson*, – U.S. –, 131 S.Ct. 1350, 1360 (2011).

An unsubstantiated allegation of one officer's conduct does not impart actual or constructive notice to policymakers that an omission in their training program

caused city employees to violate citizens' constitutional rights. *Connick,* 131 S.Ct. at 1360, citing *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410.  See also *Lewis v. City of W. Palm Beach, Fla*., 561 F.3d 1288, 1293 (11th Cir.2009) (to establish deliberate indifference, the "plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.").

Viewing the facts before this court in the light most favorable to the plaintiff, and without judging credibility, at best the court finds the plaintiff has an unsubstantiated belief that defendant Sams engaged in an inappropriate relationship with plaintiff's wife and based on that relationship, conspired with plaintiff's wife to violate plaintiff's constitutional rights.  In order to hold Sams' supervisors liable for these perceived violations, the plaintiff must establish a causal connection between the actions of the supervisors and the alleged deprivation.  This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action.  *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir.1985); citing *Wilson v. Attaway*, 757 F.2d 1227, 1241 (11th Cir.1985), *Sims v. Adams*, 537 F.2d 829, 832 (5th Cir.1976).  No evidence of widespread abuse has been produced by the plaintiff, nor has the plaintiff even made such an allegation.  Rather,

16

the plaintiff has made allegations concerning one officer's conduct.  "[E]mployees'

actions do not imply municipal liability absent an official policy or custom, and a

single incident does not support an inference of such a policy." *Barr v. Gee*, 437

Fed.Appx. 865, 875 (11th Cir.2011), citing *McDowell v. Brown*, 392 F.3d at 1290-91

(11th Cir.2004).

     Having considered the foregoing, and being of the opinion defendants Neill and

Rectors' motion for summary judgment is due to be granted, the court shall so rule by

separate Order.

*D.  Count XV – § 1983 against defendant Sams, False Arrest*

     Although the plaintiff alleges in Count XV of the Amended Complaint that

Detective Sams "personally served and arrested Mr. Norman on a warrant that he knew

to be obtained without probable cause..." (Amended Complaint, ¶ 114), the court finds

the evidence submitted does not support any such finding.    Rather, the evidence

supports a finding that Detective Sams was present when plaintiff was arrested on

August 10, 2010.  *See e.g.*, plaintiff depo. at 105-106; and arrest report (doc. 122-6),

(reflecting "Burns" was the arresting officer).

     Even if Sams was the arresting officer, and even if he assisted defendant Tracey

Norman in bringing the Elmore County charge and subsequent arrest warrant,[20] this

---

[20]The plaintiff was found not guilty in this case.  Doc. 123-2, at 30.

claim is wholly resolved by *Smith v. Gonzalez*, 670 F.2d 522 (5th Cir.), cert. denied, 459 U.S. 1005, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982).  In *Smith*, the Court held that "[w]here an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. *Id.*, 670 F.2d at 526, citing *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977).  *See also Simon v. U.S.*, 644 F.2d 490, 496 (5th Cir.1981) ("A[n] ... officer does not violate the Constitution when he executes a warrant valid on its face...").  Rather, the independent decision by a judge to issue the warrant breaks any causal chain between the officer and any constitutional violation.  *LeSavage v. White*, 755 F.2d 814, 819, n.5 (11th Cir.1985).  *See also Maas v. Moran*, 2013 WL 4456154, *5  (S.D.Miss.2013) (same); *Daniel v. Grimmett*,  2010 WL 1375632, *2 (N.D.Miss.2010) ("The Fifth Circuit has further held, 'a warrant is valid even though the court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged.') (quoting *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir.1977)).

Having considered the foregoing, and being of the opinion defendant Sams' motion for summary judgment on Count XV of the plaintiff's amended complaint is due to be granted, the court shall so rule by separate Order.

E.  *Count XVI – § 1983 against defendant Sams, "Brady Violations"*

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),

the Supreme Court held that due process requires the prosecution to turn over evidence favorable to the accused and material to his guilt or punishment.   The amended complaint before this court asserts that defendant Sams violated plaintiff's due process rights as established by *Brady* in not disclosing the alleged "romantic relationship with Mrs. Norman..."   Amended Complaint, ¶ 119. A *Brady* violation of a defendant's due process rights occurs where the prosecution suppresses material evidence favorable to the defendant.   *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196.   The Eleventh Circuit has held that "regardless of request, favorable, exculpatory or impeachment evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Scheer*, 168 F.3d 445, 451 (11th  Cir.1999) (quotation omitted). In order to show a reasonable probability that the result would have been different, a defendant must show that the government's evidentiary suppression undermined confidence in the outcome of the trial. *Id.* at 452.

Lacking from the plaintiff's pleadings is any basis to find that defendant Sams, as a Hoover police officer, had any duty under *Brady*.   The evidence before this court clearly demonstrates that Tracey Norman had plaintiff arrested in multiple counties, both before and after any allegation is made concerning defendant Sams involvement.

19

Thus, disclosure of the alleged relationship between Sams and Tracey Norman simply could not impact the outcome of the majority of the proceedings, and plaintiff makes no attempt to even identify what proceeding might have ended differently had the alleged tryst been disclosed.[21]   Furthermore, viewing the plaintiff's allegations in the light most favorable to him, the plaintiff already had his "evidence" of the alleged affair at the time of the court actions in question.  Thus, he could have presented such evidence.

Finding no viable claim stated in count XVI of the plaintiff's amended complaint, the court shall grant defendant Sams' motion for summary judgment on this count.

F.  State Law Claims

The plaintiff brings a myriad of state law claims against defendant Tracey Norman and defendant Sams.  In light of the dismissal of the § 1983 claims, there are no federal causes of action in this lawsuit.  Rather, all that remains are state law

---

[21]Additionally, even if the plaintiff's claim stated a viable cause of action under *Brady*, and assuming the plaintiff could prove "that the prosecution knowingly made false statements or introduced or allowed trial testimony that it knew or should have known was false" the remedy is a new trial "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Smith v. Secretary, Dept. of Corrections,* 572 F.3d 1327, 1333 (11th Cir.2009) (citations omitted).

claims.  Where, like here, subject matter jurisdiction is predicated exclusively on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and where diversity of citizenship is plainly absent, the decision of whether to continue to exercise supplemental jurisdiction over the state law claims rests in the court's discretion. *See* 28 U.S.C. § 1367(c)(2); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir.2003) (in deciding how to exercise § 1367(c) discretion, court should consider principles of economy, convenience, fairness, and comity); *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1569 (11th Cir.1994) (similar).  The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th  Cir.2004).

The court shall therefore dismiss the remaining state law claims for refiling in an more appropriate forum, should the plaintiff wish to proceed with the same to the extent that plaintiff's Chapter VII bankruptcy does not bar the same.

## CONCLUSION

In consideration of all of the foregoing, the court shall grant defendants Neill and Rectors' motion for summary judgment (doc. 119) on Count XVIII of the plaintiff's amended complaint, finding no genuine issue of material fact remains and that these defendants are entitled to judgment in their favor as a matter of law.

The court shall further grant defendant Sams motion for summary judgment (doc. 123) on Counts XV and XVI of the plaintiff's amended complaint, finding no genuine issue of material fact remains and that these defendants are entitled to judgment in their favor as a matter of law.

The court shall dismiss all remaining counts of the plaintiff's complaint, as they arise solely under state law and the court declines to exercise judgment over the same.

**DONE** and **ORDERED** this the 4th day of February, 2014.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE

22